# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

|  |  |
|---|---|
| Steve Rothrock, <br><br> Plaintiff, <br><br> v. <br><br> City of Georgetown; Paul Gardner, Personally and as Former City of Georgetown Administrator; Jack Scoville, Personally and as Former Mayor of the City of Georgetown; Kelvin Waites, Personally and as Former Chief of Police For the City of Georgetown, <br><br> Defendants, <br><br> And <br><br> Paul Gardner, Personally and as Former City of Georgetown Administrator, <br><br> Counterclaimant, <br><br> v. <br><br> Steve Rothrock, <br><br> Counterclaim Defendant. | C/A No.: 2:19-cv-2227-RMG <br><br><br><br> **ORDER AND OPINION** |

Before the Court is Defendants' motion for summary judgment. (Dkt. No. 106). For the reasons stated below, the motion is granted in part as to Plaintiff's federal claims. The Court dismisses Plaintiff's federal claims and remands all remaining state law claims to the Court of Common Pleas for Georgetown County, South Carolina.

1

I.   **Background**

Steve Rothrock ("Plaintiff") brings several claims against Defendants the City of Georgetown; Paul Gardner individually, and as the former City of Georgetown Administrator; Jack Scoville individually, and as the former Mayor of the City of Georgetown; and Kelvin Waites individually, and as the Chief of Police for the City of Georgetown. (Dkt. No. 86). Plaintiff's Amended Complaint essentially alleges Defendants allegedly conspired to create a false narrative that Plaintiff had been involved with the criminal activity of littering which purportedly defamed Plaintiff's character and reputation. (Dkt. No. 87).

The basic facts of this care are as follows. On June 27, 2017, Defendant Scoville lost a re-election campaign as the Mayor of the City of Georgetown. Around 9:00 p.m. that night, Suzanne Holt was at Nation Law Firm, her place of employment at the time. Nation Law Firm shared a building with Defendant Scoville's office located at 1001 Front Street, Georgetown, South Carolina. (Dkt. No. 106-4 at 5). Ms. Holt observed a blue truck pull up to the front of the building. An individual got out and discarded the signs on the sidewalk. (*Id.* at 6). The signs said "Sack Jack" in green paint. A few minutes later, Ms. Holt saw a Range Rover drive by the front of the building and turn around. (*Id.* at 9-10). A passenger exited the Range Rover and took pictures of the signs. Ms. Holt used her cell phone to take a picture of the passenger taking pictures. (Dkt. No. 106-4 at 9; Dkt. No. 106-2 at 8-10; Dkt. No. 106-5 at 8-10). Plaintiff was the driver of the Range Rover and Lee Padgett was the passenger who got out of the Range Rover and took pictures of the signs. (Dkt. No. 106-2 at 8-10; Dkt. No. 106-5 at 8-10). Ms. Holt retrieved the signs and placed them by the front door of the building. (Dkt. No. 106-4 at 8).

The next morning, Defendant Gardner went to 1001 Front Street to see Defendant Scoville and discovered the signs. (Dkt. No. 106-3 at 11-12). Defendant Gardner spoke with Ms. Holt

about the previous night's events. (Dkt. No. 106-3 at 16-17). Ms. Holt showed him a photograph that captured the Range Rover and someone getting out of the car to take a picture of the signs. (*Id.* at 17). From the image, Defendant Gardner obtained the license plate number of the Range Rover. Defendant Gardner wrote Ms. Holt's name and phone number, along with the license plate number on a sticky note. (*Id.* at 17, 19).

Defendant Gardner went to the police department. He gave Captain Nelson Brown ("Defendant Brown") the sticky note and explained that someone deposited political signs in front of Defendant Scoville's place of business. (Dkt. Nos. 106-3 at 21-22; 106-9 at 6). Defendant Brown assigned the matter to Officer Brantley. (*Id.* at 7, 10). Defendant Brown gave Officer Brantley the sticky note and told Officer Brantley follow-up with Ms. Holt. (Dkt. No. 106-8 at 5-6; Dkt. No.106-9 at 6-7). Officer Brantley obtained a sworn statement from Ms. Holt. (Dkt. No. 106-6). Ms. Holt's sworn statement says that she recognized Plaintiff as the individual getting out of the Range Rover to take pictures. (Dkt. No. 106-6). Officer Brantley ran the license plate of the Range Rover, which was registered to Plaintiff's company. (Dkt. No. 106-8 at 7-8).

On July 10, 2017, a local newspaper published an article about the incident. The article stated that Mark Mercer was charged with littering for discarding campaign signs in front of Defendant Scoville's office. (Dkt. No. 106-12 at 2). The article quoted Ms. Holt's statement to the police where she said that Plaintiff arrived at the scene, got out of the Range Rover, and started taking pictures of the signs. (*Id.* at 3). Subsequent newspaper articles clarified that Ms. Holt's statement incorrectly identified Plaintiff as the man who got out of the Range Rover and started taking pictures, when in fact the picture taker was Lee Padgett. (Dkt. No. 106-13; Dkt. No. 106-14).

It is undisputed Mr. Mercer was the individual who discarded the signs. The charges against Mr. Mercer as a result of this incident were ultimately dismissed or not pursued by the Solicitor's office. (Dkt. No. 106-3 at 23). As a result of the incident, Plaintiff was not accused of committing any crime and he was not arrested. (Dkt. No. 106-2 at 17-18). Neither Plaintiff nor Lee Padgett was questioned by the police regarding the incident. (Dkt. No. 106-8 at 15).

Plaintiff originally filed this action in the Court of Common Pleas for Georgetown County, South Carolina. (Dkt. No. 1). On August 8, 2019, Defendants removed the case to federal court based on federal question jurisdiction as Plaintiff's original complaint asserted State law claims in along with claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1-1). In November 2020, the Court issued an Order that dismissed Plaintiff's federal claims for failure to state a claim and remanded the remaining claims to State court. (Dkt. No. 72). Plaintiff obtained new counsel and filed a motion to reconsider the Court's November 2, 2020 Order/motion to amend the complaint. (Dkt. No. 82). In April 2021, the Court granted Plaintiff leave to file an Amended Complaint and vacated its November 2, 2020 Order. (Dkt. No. 85).

On April 21, 2021, Plaintiff filed an Amended Complaint that asserts both state and federal law claims against Defendants. (Dkt. No. 87). The Amended Complaint asserts claims for: (1) class of one equal protection/retaliation/Title 42 U.S.C. § 1983 as to all Defendants; (2) civil conspiracy pursuant to 42 U.S.C. § 1983 as to all Defendants; (3) negligence/gross negligence as to all Defendants; (4) defamation-libel as to all individual Defendants; (5) civil conspiracy as to individual Defendants; (6) negligent or intentional infliction of emotional distress as to all individual Defendants; (7) violation of frivolous claims proceedings act as to Defendant Gardner; and (8) malicious prosecution as to Defendant Gardner. (Dkt. No. 87 at ¶¶ 40-87). Defendant

Gardner filed counterclaims against Plaintiff for (1) slander *per se*; (2) false light; (3) and abuse of process. (Dkt. No. 90 at 9-11).

Defendants filed a motion for summary judgment seeking to dismiss all of Plaintiff's claims. (Dkt. No. 106). Plaintiff filed a response in opposition to Defendants' motion for summary judgment. (Dkt. No. 117). Defendants filed a reply. (Dkt. No. 131). The matter is ripe for the Court's adjudication.

## II.   Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the non-moving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment must demonstrate that specific, material facts exist that give rise to a genuine issue. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting

*Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)). Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### III.  Discussion

Defendants' motion for summary judgment seeks to dismiss all of Plaintiff's claims. (Dkt. No. 106).  The Court will first address Plaintiff's federal claims.

#### 1. First Amendment Retaliation Claim Pursuant to 42 U.S.C. § 1983

Plaintiff asserts a first amendment retaliation claim pursuant to 42 U.S.C. § 1983 against all Defendants.  (Dkt. No. 87 at ¶¶ 40).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation "was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

To bring a first amendment retaliation claim, the Plaintiff must establish three elements: (1) that his speech was protected; (2) that Defendants' retaliatory action adversely affected Plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the speech and the Defendant's retaliatory action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).  Plaintiff must demonstrate that "[D]efendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights." *Id*. at 685.

Plaintiff essentially argues that his constitutional rights were deprived because his prior litigation history with Defendant Scoville motivated Defendants to "tamper with/intimidate" Ms. Holt to include his name in her witness statement, which lead to Plaintiff's name being published in the local newspaper in relation to the littering incident.  (Dkt. No. 117 at 27-28).  Plaintiff argues

6

that Defendants' actions harmed his good name and reputation with the community for both personal and business reasons. (*Id.* at 28). Plaintiff alleges he suffered damages from Defendants' actions through the loss of business business dealings and profits of $1,000,000.00 along with emotional and mental distress. (Dkt. No. 87 at ¶ 51 C.).

As to the first element, Plaintiff alleges in the Amended Complaint that he "opposed Defendant Scoville's re-election campaign in 2012/13 and 2016/17." (Dkt. No. 87 at ¶ 19). Defendants' motion for summary judgment assumes that Plaintiff engaged in protected speech. (Dkt. No. 106-1 at 18). The Court finds this element has been established.

Plaintiff fails to establish the second element, that Defendants' retaliatory actions adversely affected his constitutional speech for two reasons. First, the record reflects that only Officer Brantley included Plaintiff's name in the investigation. On June 27, 2017, Ms. Holt gave a sworn statement to Officer Brantley that identified Plaintiff as the individual who got out of the Range Rover. (Dkt. No. 106-6). Subsequently, Ms. Holt signed an Affidavit where she contradicts her prior identification of Plaintiff in her sworn statement to Officer Brantley. (Dkt. No. 106-7 at ¶ 3). She states that Officer Brantley told her "[w]e know [Plaintiff] is involved, and we want that included in your statement." (*Id.* at ¶ 12). Ms. Holt states that she complied with Officer Brantley's directions despite not knowing Plaintiff's identity at that time. (*Id.* at ¶ 14). Officer Brantley testified that he does not remember if he told Ms. Holt that Plaintiff was involved, but that he would not have told her to include that she recognized Plaintiff if she did not. (Dkt. No. 106-8 at 10-13).

Whether or not Officer Brantley told Ms. Holt to include Plaintiff's name in her sworn statement is not an issue of material fact. Officer Brantley is not a party to this action and the record reflects that none of the Defendants in this case instructed Officer Brantley to include

7

Plaintiff's name in the investigation and sworn statement of Ms. Holt. *See* (Dkt. No. 106-9 at 6-7) (Defendant Brown testifying he could not recall if Defendant Gardner indicated whether Plaintiff was involved but that he never discussed Defendant Garner or Defendant Scoville's feelings toward Plaintiff); (Dkt. No. 106-8 at 9) (Defendant Brantley testifying he did not speak to Defendant Gardner about Plaintiff's possible involvement with the incident and was not given anything other than the sticky note to begin the investigation); (Dkt. No. 106-10) (Defendant Waites testifying he did not give Officer Brantley any instructions on how to investigate the incident, and never spoke with Defendant Gardner about the specifics of the case except generally to confirm Defendant Gardner had spoken to Captain Brown); (Dkt. No. 106-2 at 20) (Plaintiff testifying he has no information that Defendant Waites had personal knowledge of what Officer Brantley allegedly did during the investigation). Further, as to Defendants Waites and Scoville, Plaintiff himself testified that he has no knowledge these individuals were personally involved in the investigation. (Dkt. No. 106-2 at 14, 18, 20). Plaintiff testified he has no information that Defendant Scoville directed anyone to conduct the investigation or include Plaintiff's name in the investigation. (Dkt. No. 106-2 at 13-15). Plaintiff testified he has no evidence to rebut Defendant Scoville's statement that he wanted nothing to do with the incident. (Dkt. No. 106-2 at 18).

Viewing the evidence in a light most favorable to Plaintiff, there is no genuine issue of material fact that Plaintiff fails to present evidence Defendants took any personal action with respect to the investigation and Ms. Holt's sworn statement which Plaintiff argues adversely affected him and deprived him of a constitutional right because the incident was published and appears to implicate Plaintiff in criminal activity, which harmed his reputation. *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 655 (4th Cir. 2017) (a plaintiff seeking to recover for

First Amendment retaliation must allege that . . . the defendants took some action that adversely affecter her First Amendment rights).

Second, Defendants argue that Plaintiff's §1983 claims should be dismissed as to all Defendants because Plaintiff fails to allege the deprivation of a property or liberty interest. (Dkt. No. 106-1 at 15). The crux of Plaintiff's allegations are that Defendants defamed him by creating a false narrative and appearance he was involved in criminal activity that involved the abuse of government authority. (Dkt. No. 117 at 8-9).

In *Paul v. Davis*, the Supreme Court of the United States held that injury to reputation, standing alone, does not implicate a protected liberty interest. 424 U.S. 693, 711-12 (1976). Defamation is only actionable under § 1983 if there is state action accompanied by a change or extinguishment of a right or status guaranteed by state law or protected by the Constitution. *Kincannon v. Howland*, C/A No. 3:17-866-MGL-SVH, 2017 WL 1753318, at *2 (D.S.C. Apr. 14, 2017) (citing *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (quoting *Paul*, 424 U.S. at 701-702)).[1] Courts have labeled the showing required to bring a § 1983 claim for defamation as "stigma-plus." *Defeo v. Sill*, 810 F. Supp. 648, 656 (E.D. Pa. 1993). "[A] plaintiff bringing a 'stigma-plus' claim under *Paul* must allege both a stigmatic statement and a 'state action that distinctly altered or extinguished' his legal status." *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012); *see also Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (noting that since *Paul*, the Supreme Court "has repeatedly admonished judges to be wary of turning the Due Process Clause into a 'font of tort law' by permitting plaintiffs to constitutionalize state tort claims through artful pleading.").

---

[1] *Kincannon v. Howland*, C/A No. 3:17-866-MGL-SVH, 2017 WL 1753318, at 2 (D.S.C. Apr. 14, 2017), *adopted by*, 2017 WL 1740084.

9

Plaintiff relies on *Wisconsin v. Constantineau*, 400 U.S. 433 (1971) and the dissent in *Paul* to support the argument that damage to his name and reputation as the result of Defendants' actions, are sufficient to establish a constitutional violation pursuant to § 1983. (Dkt. No. 117 at 17-23). The government action at issue in *Constantineau* was "posting" which consisted of forbidding in writing the sale or delivery of alcoholic beverages to certain persons who were determined to have become hazards to themselves, or their family, or to the community by reason of their excessive drinking, without first providing notice and an opportunity to be heard. *Constantineau*, 400 U.S. 433 at 434 n. 2. The Supreme Court in *Constantineau* found a constitutional violation in part "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him. . .". 400 U.S. at 437.

Five years later, the Supreme Court of the United States issued a ruling in *Paul*. 424 U.S. 693 (1976). *Paul* analyzed the facts of *Constantineau* and adopted its own interpretation of "because of what the government is doing to him" to mean that posting deprived the individual of a right previously held under state law- the right to purchase or obtain liquor- and significantly altered her legal status under state law. *Id*. at 708-709. Further, *Paul* held that "stigma" resulting from the defamatory character of the posting, did not, standing alone, deprive Constantineau of any "liberty" interest protected by the procedural guarantees of the Fourteenth Amendment. *Id.* at 708-709. Thus, *Paul* clarified that the deprivation in *Constantineau* occurred not only because of the stigma but because the government action deprived the individual of a right previously held under state law. *Id*.

The holding in *Paul*, cannot be avoided by alleging that defamation by a public official occurred in retaliation for the exercise of a First Amendment right. *Gini v. Las Vegas Metropolitan Police Dep't.*, 40 F.3d 1041, 1044-45 (9th Cir. 1994) (citing *Patton v. County of Kings*, 857 F.2d

10

1379 (9th Cir. 1988) (quoting *Paul*, 424 U.S. at 701)).  For any defamation and damage flowing from it, a Plaintiff has a tort remedy under state law, not under the First Amendment.  *Gini.*, 40 F.3d at 1045.

Here, the record reflects that Plaintiff testified he lost real estate dealings with Carol Jayroe because of Defendants' actions.  (Dkt. No.106-2 at 16; 22-24).  Defendants submit the Declaration of Ms. Jayroe which states that prior to 2019 she was the listing agent for several of Plaintiff's real estate deals, but Plaintiff made negative remarks about her abilities as a real estate agent.  She states that she discontinued a business relationship with Plaintiff due to his remarks and attitude toward her.  (Dkt. No. 106-18; Dkt. No. 121-1).  This is not a dispute of material fact because whether Plaintiff lost business deals with a private citizen as a result of Defendants' alleged defamation does not demonstrate that Plaintiff suffered an altered legal right previously held under state law.  Further, the record reflects that Plaintiff testified that he was not questioned as a witness, was not arrested, and was not prosecuted by police arising out of the littering incident.  (Dkt. No. 106-2 at 17-18; Dkt. No. 106-8 at 15).

Viewing the evidence in a light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact that Plaintiff has failed to present evidence he suffered anything more than alleged defamation to his character as a result of Defendants' alleged actions, which is insufficient to establish a first amendment retaliation claim pursuant to §1983.  Defendants' motion for summary judgment is granted as to Plaintiff's 42 U.S.C. § 1983 first amendment retaliation claim.

### 2. Civil Conspiracy Pursuant to 42 U.S.C. § 1983

Plaintiff brings a civil conspiracy claim against Defendants pursuant to 42 U.S.C. § 1983. To state a civil conspiracy pursuant to § 1983, Plaintiff must show: (1) Defendants acted jointly in

11

concert; (2) to commit some overt act in furtherance of the conspiracy; (3) which resulted in the deprivation of Plaintiff's constitutional rights. *Hinkle v. City of Clarksburg*, 81 F. 3d 416, 421 (4th Cir. 1996). The burden is weighty. *Id*. at 421. While a Plaintiff need not produce direct evidence of a meeting of the minds, a Plaintiff must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Id*. The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id*.

The primary wrong Plaintiff alleges is that Defendants abused their government authority by conspiring to create a false narrative Plaintiff was involved with criminal or unsavory activity, which harmed his reputation within the community. (Dkt. No. 87 at ¶ 57); (Dkt. No. 117 at 18-19). Plaintiff fails to establish that Defendant's acted jointly in concert to deprive him of a Constitutional right. As previously stated, viewing the record in a light most favorable to Plaintiff, there is no genuine issue of material fact that Plaintiff failed to prove any of the Defendants acted to include Plaintiff's name in the investigation because the record reflects that Officer Brantley interviewed Ms. Holt and included Plaintiff's name in the investigation. Defendants' motion for summary judgment as to Plaintiff's 42 U.S.C. § 1983 civil conspiracy claim is granted.

### 3. *Monell* Liability Asserted against Defendant City of Georgetown pursuant to 42 U.S.C. § 1983

Plaintiff brings a 42 U.S.C. § 1983 claim asserted against Defendant the City of Georgetown. Plaintiff alleges that Defendant the City had a policy to "get" Plaintiff that persisted on the part of the City's two highest ranking officials Defendants Scoville and Defendant Gardner. (Dkt. No. 117 at 41) (citing Dkt. No. 64 at 21-22; Dkt. No. 87 at ¶¶ 25, 36). Plaintiff alleges that these Defendants had policy-making authority and decided to proceed with the investigation of the

12

littering incident in the continuation of the official, but unwritten policy and custom of Defendant the City to intimidate, harass, interfere-with, and retaliate against Plaintiff. (Dkt. No. 87 at ¶ 36).

A municipality cannot be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Local governments can be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. *Monell* claims can arise (1) through an express policy; (2) through the decisions of final policymakers; (3) through an omission, such as failure to properly train officers, that manifests deliberate indifferent to the rights of citizens; or (4) through persistent and widespread practices equating to the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). To prevail under a *Monell* claim, a plaintiff must point to a "persistent and widespread practice [] of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference" *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)). Knowledge and indifference can be inferred from the extent of employees' misconduct. *Id.* at 1391.

The record reflects that Plaintiff testified that he has no information as to whether Defendant the City of Georgetown had knowledge there would be a newspaper article covering the incident. (Dkt. No. 106-2 at 21-22). Plaintiff testified he had no information to contradict Defendant Scoville's statement he wanted nothing to do with this. (Dkt. No.106-2 at 18). Officer Brantley testified he did not speak to Defendant Gardner about Plaintiff's possible involvement with the incident. (Dkt. No. 106-8 at 9). Plaintiff testified he had no information that Defendant

Scoville directed anyone to conduct the investigation or include Plaintiff's name in the investigation. (Dkt. No. 106-2 at 13-15). Viewing the evidence in a light most favorable to Plaintiff, there is no genuine issue of material fact that Plaintiff fails to set forth evidence to show that Defendant the City of Georgetown had knowledge of an widespread unconstitutional practice implemented through an official policy and failed to act to correct it due to deliberate indifference. The Court grants Defendants' motion for summary judgment as to Plaintiff's *Monell* liability claims pursuant to 42 U.S.C. § 1983 against Defendant the City of Georgetown.

### 4. Class of One Equal Protection in Violation of the Fourteenth Amendment

As part of his § 1983 claim, Plaintiff asserts "class of one" claim in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff alleges Defendants singled him out and targeted him for harassment, unequal and vindictive treatment in violation of the principles expressed by the Supreme Court of the United States in *Village of Willowbrook v. Olech*. 528 U.S. 562 (2002); (Dkt. No. 87 at ¶ 47).

*Village of Willowbrook*, recognized that an equal protection claim could be brought by a "class of one" where the Plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in the treatment. *Olech*, 528 U.S. at 564. "To be similarly situated for purposes of a class of one case, the persons alleged to have been treated more favorably must be identical or directly comparable to the Plaintiff in all material aspects." *Robbins v. Becket*, 794 F.3d 988, 996 (8th Cir. 2015). "Identifying the disparity in treatment is especially important in class-of-one cases . . . A class-of-one plaintiff must therefore provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Id*. Under a class of one equal protection analysis, it is

14

"not sufficient for a plaintiff simply to show that the defendants' actual motive for their disparate treatment was irrational; rather he must negate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 447 (4th Cir. 2004).

Plaintiff argues that Lee Padgett, the passenger who exited the Range Rover to take pictures of the discarded signs, and Plaintiff's wife, who was also a passenger in the vehicle on the night of the incident, were treated more favorably than Plaintiff because their names were not included as part of the investigation. Plaintiff also alleges he was treated differently from "all persons who fortuitously witnessed a crime or were in close proximity to a crime being committed" but whose names were not reported as being present. (Dkt. No. 87 at ¶ 47).

The record reflects that Plaintiff drove his Ranger Rover past Defendant Scoville's office just after Mr. Mercer discarded the signs. (Dkt. No. 87 at ¶ 30; Dkt. No. 106-8 at 14; Dkt. No. 106-2 at 9-10). Lee Padgett and Plaintiff's wife were passengers in the car with him. (Dkt. No. 87 at ¶ 30). Lee Padgett got out of the Range Rover and took pictures of the discarded signs. (Dkt. No. 106-2 at 9). Ms. Holt took pictures of Plaintiff's Range Rover at the scene. The photographs show Plaintiff's vehicle from the rear along with somoene taking pictures of the discarded signs. (Dkt. No. 87 at ¶¶ 30, 32C.; Dkt. No. 106-2 at 9-10). Plaintiff testified that his vehicle was identifiable to everyone. (Dkt. No. 106-2 at 9). Officer Brantley ran the license plate number and found that the vehicle was registered to Rockmore, Plaintiff's company. (Dkt. No. 106-8 at 8). Officer Brantley also recognized the description of the vehicle. (*Id*. at 7-8). Ms. Holt gave a sworn statement to Officer Brantley that identified Plaintiff as the man who got out of the Range Rover to take pictures. (Dkt. No. 106-6). Officer Brantley testified that if it had been someone other than Plaintiff who arrived on the scene, he would have included the witness's name in the report.

(Dkt. No. 106-8 at 12-13).  On July 10, 2017, the newspaper quoted Ms. Holt's statement that Plaintiff got out of the Range Rover and took pictures at the scene.  (Dkt. No. 106-12 at 3).

Viewing the evidence in a light most favorable to Plaintiff, the record reflects that Plaintiff's Range Rover was in fact present at the scene of the incident moments after Mr. Mercer pulled away.  Ms. Holt took a picture of Plaintiff's Range Rover that displayed the license plate.  Officer Brantley ran the license plate number and identified the vehicle as Plaintiff's.  Plaintiff admits that everyone knew it was his car.  Plaintiff does not present any evidence to show that Mr. Padgett or his wife were identifiable from the photographs Ms. Holt took.  There is no issue of material fact Plaintiff has failed to demonstrate he was treated differently from others similarly situated.  *Olech*, 528 U.S. at 564.  Therefore, there Defendants' motion for summary judgment is granted as to Plaintiff's class of one equal protection claim.

### 5. Remand Remaining Claims

The remainder of Plaintiff's claims for negligence, gross negligence; defamation-libel; intentional infliction of emotional distress; violation of the frivolous claims proceeding act; and malicious prosecution along with Defendant Gardner's counterclaims for slander *per se*; false light; and abuse of process either arise under state law or do not present an issue of federal statutory or constitutional law.  Once a district court has dismissed the federal claims in an action, it maintains discretion to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction, or remand in cases removed from State court.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 345, 357 (1988); 28 U.S.C. § 1367(c) (listing factors to inform whether to exercise supplemental jurisdiction over State claims such as whether the State claims involve novel or complex issues of law; whether the State law claims predominate; whether the federal claims remain in the case).  When the exercise of this discretion involves the additional question of

whether to remand the case to State court, the federal court should consider "principles of economy, convenience, fairness, and comity". *Carnegie-Mellon*, 484 U.S. at 357.

The Court has considered principles of economy, convenience, fairness, and comity, and the Court finds that several factors support remand of the remaining claims in this case. First, all of the federal claims that justified the Court's jurisdiction have been dismissed on summary judgment. Second, Plaintiff alleges several claims arising under State law, which predominate. Last, remand is preferred because if the Court were to dismiss Plaintiff's State law claims, it could result in the expiration of the statute of limitations on some of those claims. *Carnegie-Mellon*, 484 U.S. at 353-54. Therefore, the Court will remand Plaintiff's negligence, gross negligence; defamation-libel; intentional infliction of emotional distress; violation of the frivolous claims proceeding act; and malicious prosecution claims along with Defendant Gardner's counterclaims for slander *per se*; false light; and abuse of process to the Court of Common Pleas for Georgetown County, South Carolina.

### IV.    Conclusion

For the reasons stated above, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's federal claims. (Dkt. No. 106). Plaintiff's first amendment retaliation claim, civil conspiracy claim, and class of one equal protection claim all brought pursuant to 42 U.S.C. § 1983 are **DISMISSED**. The Court **REMANDS** all remaining causes of action to the Court of Common Pleas for Georgetown County, South Carolina for adjudication on the merits.

**AND IT IS SO ORDERED**.

s/ Richard Mark Gergel  
Richard M. Gergel  
United States District Judge

March 28, 2022  
Charleston, South Carolina